*98 Opinion of the Count.. — In this case the appellant relies on his elder legal title, and the only question to be decided by the court, is, whether the entry under which the appellees claim can be supported. That entry is as follows, to wit: “ October 17th 1783, Henry Crutcher and John Tebbs enters 10,000 acres of land on a T. W. No. 18,747, as tenants in common, beginning at a large black-ash and a small buck-eye, marked thus I. T. on the side of a buffaloe road leading from the lower Blue-Licks a north-east course, about 7 miles north-east by east from the said Blue-Licks, a corner of an entry of 20,000 acres made in the name of John Tebbs, John Sharp, John Clark, David Blanchard and Alexander M’Clain, funning thence with the said Tebbs and company’s line due east 1600 poles, thence south 1000 poles, thence west 1600 poles, thence north 1000 poles to the beginning for quantity.”
The counsel for appellant has relied principally on the appellees not having established by testimony the notoriety of the lower Blue-Licks, at the time the above entry was made ; without which, it is contended the entry does not contain sufficient description.
This has necessarily drawn the court to the consideration of a question hithefto not fully decided on by this court; that is, whether the court will take notice of the general history of the settlement of this country, without its being established by evidence filed in the cause ?
In considering this subject, the court have not been able to derive any considerable aid from British authorities. Owing to the different situation of that country' from ours, and owing to our land law being in its provisions unlike anything which has prevailed in that country, precedents clearly elucidating the subject were not to be expected. The court discover that there will be considerable difficulty in laying down any general rule on the subject; and frequently it will be hard to distinguish between those things the notoriety of which the court will ex officio take notice of, and those of which they will require proof. The court, however, feel no hesitation in declaring, that transactions and objects which necessarily connect themselves with and form a part of the general history or geography of the country, ought to be *99 taken notice of without particular evidence proving their notoriety.
The appellees’ entry was made on the 17m of October 1783, and in the month of August 1788, the memo-rabie battle between the Indians and the early settlers of Kentucky, took place at the lower Blue-Ricks ; a circumstance which gave a, degree of notoriety to that place, which at that periodjt would riot otherwise have acquired; and whicnperhaps np.other place in the then district of Kentucky possessed.. The knowledge of the name by which the place was called, was not confined to those who resided near it; but, in, consequence of the circumstance aboye mentioned, became general through,out Kentucky : and.no historian,who will give a faithful account of ihe settlement and., transactions of this country, Will omit to speak of the battle, and the place at which it was fought. A subsequent locator could not have been at a loss, or misled by an entry calling for the lower Blue-Licks. He qould have been informed of the place intended, by almost every individual, who had resided in Kentucky in, 1788,
The counsel for the appellant has urged, that the court cannot judicially take notice of the above facts ; they not being proved: and in doing so, we are resorting to our private knowledge of facts,, Tp , this, the court answer, that every judge ought to, be acquainted with the general history of his country ; and when it becomes necessary, for the purposes of justice, he should avail himself of that knowledge ; for there is a clear and manifest distinction between a judge’s knowledge of a particular fact of a private nature, and of a transaction of general and universal notoriety, which relates to the whole community,
The court, for the above reasons* think it was unnecessary to,have taken testimony to establish,the notoriety of the lower Blue-Licks aijd so far as the entry depends on this call, as the appellant has. on record admitted the same to, be correctly laid down iq the plat, the court would sustain the appellees’qlaim.
It has further been contended, in opposition to this entry, that although aplace called the lower Blue-Licks, might have been notorious before the entry was made, and the place now shewn and claimed by the appellees is admitted to be the lower Blue-Licks ; yet the place now *100 known by that name, may not be the samé that was só cahed previous to the making of the appellees’ entry. The court think that wherever any place or object was known by a particular name before an entry was made j and an object or place is now shewn bearing the same name ; it is fairly presumable that the place or object now shewn was intended; unless by proof, or other circumstances, that presumption is destroyed.
The identity and notoriety of the lower Blue-Licks being established, the remaining objects to be attended to, are, the black-ash and buck-eye marked I. T. standing on a buifaloe road leading from said licks a north-east course, about 7 miles north east by east from the said Blue-Licks, a corner of an entry of 20,000 acres made in the name of John Tebbs and others.
From the testimony and surveyor’s report filed in the pause, the court find that previous to the making of the entry now under consideration, a black-ash and buck-eye were marked with the letters I. T. as a corner to an entry of 20,000 acres made in the name of John Tebbs and others; and that said trees stood on a buifaloe road leading from said licks, north 53 degrees east, 7 miles and 172 poles from the lower Blue-Licks.
The court are of opinion, that there is such a degree of correctness ip this description, that a subsequent locator could by reasonable inquiry have ascertained the beginning of the appellees’- entry ; and therefore the entry must be sustained.
Wherefore, it is considered that the decree of the Mason circuit court, as to the right to the land in controversy, be affirmed.
In the final decree pronounced by the circuit court of Mason, there is error in the court’s affixing the value upon the clearing of the 5 acres of meadow ground in the depositions mentioned : instead of proceeding in that way, they should have directed the commissioners again to go on the land and make a just estimate and valuation of the clearing and fencing the said 5 acres, or should have appointed other commissioners for that purpose.
The inferior court also erred in allowing the appellant any compensation for the improvements made by Jackson, or for the sum paid by the appellant to him. It does hot appear to the court, from any of the exhibits *101 Aled, that Jackson had such a claim to the land which he improved, as would (under the occupying claimant Jaw) (a), have enabled hint to recover from Bodley, Hughes and others the value of improvements made by him ; nor could he have recovered of Hart, without furr ther evidence of title than is here shewn, had Hart turned him out of possession by suit. And if so, the appellant by getting into possession by contract or otherwise, cannot by the aid of his title stand in a better situation than Jackson would have stood, the improvements not having been made under his claim.
A motion was made to the court for a re-hearing of this cause ; particularly as related to the first point decided ; which was very elaborately argued by Talbot for appellant, and Bibb for the appellees.
The court overruled the motion.

{a) A&s o# 1796-7,p.i43> 1 Brad. 20a.